## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FELDMAN & PINTO, P.C.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 11-cv-5400** |
| | : | |
| **MARTHA LYNN SEITHEL** | : | |
| **and** | : | |
| **SEITHEL LAW, LLC,** | : | |

## <u>ORDER</u>

AND NOW, this       day                   , 2011, upon consideration of Plaintiff's Motion for Preliminary Injunction and Defendants' Response and Memorandum of Law in Opposition thereto, it is hereby **ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**.

_____

TUCKER, PETRESE B.,            U.S.D.J

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELDMAN & PINTO, P.C.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 11-cv-5400** |
| | : | |
| **MARTHA LYNN SEITHEL** | : | |
| **and** | : | |
| **SEITHEL LAW, LLC,** | : | |

## DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, Martha Lynn Seithel ("Seithel") and Seithel Law, LLC ("Seithel Law")(hereinafter collectively "Defendants"), oppose the Motion for Preliminary Injunction filed by Plaintiff Feldman & Pinto, P.C. ("the Firm" or "Plaintiff") and, in support thereof, state the following:

1.     Admitted in part, denied in part. Defendants admit only that Plaintiff is a law firm with an office in Philadelphia and that Ms. Seithel was engaged in the practice of law with the Firm from January 2010 until June 13, 2011. Defendants deny the remaining allegations  in, or incorporated in, Paragraph 1 of Plaintiff's Motion.

2.     Denied as stated. Defendants admit only that the Firm terminated Ms. Seithel's employment with the Firm on June 13, 2011 and that Ms. Seithel has formed a law firm in South Carolina. Defendants deny the remaining allegations and specifically deny in engaging in any wrongful conduct at any time.

3. a.-e.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph or its subparts.

4.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

5.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

6.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

7.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

8.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

9.      Denied.  The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

10.    Denied. The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

11.    Denied. The allegations contained in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations made in this paragraph.

WHEREFORE, based on the above and Defendants' accompanying supporting Memorandum of Law, Defendants respectfully request that Plaintiff's Motion for a Preliminary Injunction be denied.

Respectfully submitted,

SPECTOR, GADON & ROSEN, P.C.

By:___/s/ Jennifer Myers Chalal_____
        Alan B. Epstein (ID No. 02346)
        Jennifer Myers Chalal (ID No. 77841)
        1635 Market Street – 7th Floor
        Philadelphia, PA 19103
        (215)241-8888

Dated:  September 28, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELDMAN & PINTO, P.C.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 11-cv-5400** |
| | : | |
| **MARTHA LYNN SEITHEL** | : | |
| **and** | : | |
| **SEITHEL LAW, LLC,** | : | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR RESPONSE AND OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

After actively recruiting Martha Lynn Seithel ("Seithel") to join their law practice in an attempt to use her contacts and experience to broaden its relationships with existing clients and referring attorneys and to expand its local counsel business, the Plaintiff law firm, Feldman & Pinto, P.C. ("the Firm" or "Plaintiff"), now seeks to prohibit Ms. Seithel and Seithel Law, LLC ("Seithel Law")(hereinafter collectively "Defendants") from continuing to work with those clients and referring attorneys, many of whom she brought to the firm, based on false and scurrilous allegations regarding Ms. Seithel's legal acumen and her past conduct.

As the following shall demonstrate, Plaintiff is not entitled to a preliminary injunction because it cannot demonstrate a reasonable likelihood of success on the merits of its tortious interference claim.  More importantly, Plaintiff cannot establish that it will suffer any irreparable harm absent a preliminary injunction.  Plaintiff's Motion is nothing more than a desperate

attempt to abuse the litigation process to prevent Ms. Seithel from engaging in lawful competition after it precipitously terminated her employment. Accordingly, Defendants respectfully submit this Memorandum of Law in Support of their Response in Opposition to Plaintiff's Motion for Preliminary Injunction and respectfully request that Plaintiff's Motion be denied.

## II.   **STATEMENT OF RELEVANT FACTS**

After receiving a Bachelors of Arts and a Juris Doctor from the University of South Carolina, Ms. Seithel clerked for South Carolina Circuit Court Judge, the Honorable Marc Westbrook, before joining the law firm of Motley Rice, LLC (formerly Ness Motley).  During her eight years with Motley Rice, Ms. Seithel developed a thriving practice litigating and managing hundreds of pharmaceutical litigation cases, including those involving the drugs Fenphen, Vioxx, Avandia, Reglan, Advair, Paxil Birth Defects, Zicam, Botox and Trasylol. She also served as local counsel, providing litigation support to numerous law firms.

Ms. Seithel has been a member in good standing of the Bar of the State of South Carolina since 2001 and has been admitted to practice in the South Carolina District Court and the Courts of Appeals for the Fourth and Ninth Circuits.  She has been admitted to practice *pro hac vice* in numerous jurisdictions, including the Federal District Courts for the Eastern District of Pennsylvania and District of Arizona, and the state courts in Pennsylvania, New Jersey, California and Arizona.

Ms. Seithel met Rosemary Pinto, a partner in the Plaintiff firm, in 2009 while in attendance at status conferences related to Paxil Birth Defect cases Ms. Seithel was prosecuting in the Philadelphia Court of Common Pleas. Beginning in the fall of 2009, Ms. Seithel entered into discussions with Ms. Pinto and her partner Laura Feldman, regarding their desire to have Ms. Seithel join their firm at the end of 2009.   More specifically, Plaintiff wanted to utilize Ms. Seithel's contacts to increase its mass tort pharmaceutical litigation practice and to use Ms. Seithel's experience to broaden relationships with its existing clients and referral attorneys and expand its local counsel business. Plaintiff also wanted Ms. Seithel to handle all of its mass tort pharmaceutical individual case litigation because Plaintiff never directly handled this type of litigation. At that time, Plaintiff's practice was primarily concentrated in medical malpractice and personal injury cases.  The Firm also acted as local counsel for several law firms around the country, including Ms. Seithel's firm, Motley Rice.

Ms. Seithel agreed to join Plaintiff Firm in January 2010.[1]  She immediately took primary responsibility for individual plaintiff pharmaceutical case management and the firm's multi-district litigation work.  She also successfully used her contacts in the industry to expand the firm's local counsel practice.

---

[1] At no time during her employment with Feldman & Pinto did Ms. Seithel sign any type of agreement restricting her ability to work in competition with the Firm after her employment with the Firm ended.  In fact, such restrictions are in direct violation of Rule 5.6 of the Pennsylvania Code of Professional Responsibility.

In May 2011, Ms. Feldman and Ms. Pinto informed Ms. Seithel that they no longer wanted to try cases and were only interested in expanding their local counsel practice. The three attorneys discussed dividing the practice so that the majority of the individual cases would remain with Ms. Seithel and the bulk of the local counsel work would remain with the Firm, and actually reached an agreement on how the Firm's cases would be divided.

In furtherance of her discussions with Ms. Feldman and Ms. Pinto, Ms. Seithel retained counsel to assist her with the setting up of a new practice. During the week of June 6, 2011, Ms. Seithel, Ms. Feldman and Ms. Pinto exchanged e-mail correspondence regarding a formal proposal concerning the splitting of the practice. Despite these ongoing discussions, on June 13, 2011, Ms. Seithel learned from a Texas attorney with whom she was working on a Reglan case that Plaintiff had told him Ms. Seithel no longer worked at the Firm. Plaintiff confirmed this statement during a telephone conversation with Ms. Seithel on June 13, 2011 and advised her that she was terminated. The next day, the Firm filed the instant law suit in the Philadelphia Court of Common Pleas by Writ of Summons.

After being informed of the termination of her employment, Ms. Seithel completed and filed Seithel Law, LLC's articles of organization, obtained malpractice insurance and began practicing as Seithel Law, LLC. As she was permitted to do by the applicable Rules of Professional Responsibility, after her termination, Ms. Seithel also informed the referring counsel and clients with

4

whom she had worked while with the Firm, many of whom she had brought into the Firm, of her change of status.[2] Enclosed with the notification letter was a form that would permit the client to choose to join her at her new firm, remain with Plaintiff Firm, or go to any other attorney for representation.

Several of those clients and referring attorneys contacted Ms. Seithel indicating their desire to have her continue representing them and/or their clients. Shortly thereafter, several clients and referring lawyers whose cases Ms. Seithel brought into the Firm or had primary responsibility, signed representation agreements with Seithel Law, LLC. Since beginning practice as Seithel Law, LLC, Ms. Seithel made arrangements with the prestigious Philadelphia and California mass tort law firm of Lopez McHugh LLP to serve as local counsel for those cases filed in Pennsylvania and California.

On August 25, 2011, over two months after this matter was commenced by Writ of Summons and after Ms. Seithel filed a lawsuit against Plaintiff in the United States District Court of South Carolina Charleston Division, Plaintiff filed a formal Verified Complaint in Equity requesting damages and the issuance of a preliminary injunction for alleged intentional interference with contractual relationships, conversion, fraud, unjust enrichment, breach of duty of loyalty and breach of contract, all based on Ms. Seithel's conduct in contacting firm clients after Plaintiff terminated her employment.

On August 26, 2011, Ms. Seithel removed this matter to this Court based upon the complete diversity of citizenship of the parties. The case was

---

[2] Contrary to Plaintiff's assertions, every assertion in Ms. Seithel's letter was

assigned to the Honorable Petrese B. Tucker, United States District Judge for the Eastern District of Pennsylvania.  At 3:00 p.m. on that same day, Ms. Seithel's counsel, Alan B. Epstein, Esquire, received a telephone call from the federal Clerk's office notifying him that Plaintiff's counsel, Marc Zucker, Esquire, was at the federal courthouse waiting to present an Emergency Motion for Temporary Restraining Order he had just filed to the emergency judge, the Honorable Juan R. Sánchez, and requesting that Mr. Epstein come to the courthouse to meet with Judge Sánchez.

At the hearing before Judge Sánchez, Mr. Zucker first suggested that only 114 cases were involved but later admitted that as many as 151 clients may have chosen to continue having Ms. Seithel represent them.  Mr. Zucker made no representation to the Court that Ms. Seithel had initiated any additional contact with any other client of the firm after she sent out her initial letter to those clients on whose matters she had been employed during her tenure with the Firm.  He also demanded that Ms. Seithel be enjoined from making contact with any referring lawyers for the purpose of taking additional cases that then resided with Feldman & Pinto and were active in the Philadelphia Court of Common Pleas without proffering any legal or factual basis for that action.

Because of the dearth of evidence presented by Plaintiff, Judge Sánchez refused to make any findings, but agreed to impose a temporary restraining order that would maintain the *status quo*, permitting the party who was

completely factual.

representing each client as of August 26, 2011 to continue representing that client and prohibiting both Ms. Seithel and Plaintiff Firm from soliciting any client who had made a choice to be represented by the other, either directly or through referring counsel.  Ms. Seithel has abided by this Order and has not contacted any client who has chosen to remain with Plaintiff.

## III.   **LEGAL DISCUSSION**

### A.   **Standard**

Preliminary Injunctions are extraordinary and drastic remedies. *Sovereign Order of Saint John of Jerusalem-Knights of Malta v. Messineo*, 572 F. Supp. 983, 988 (E.D. Pa. 1983).  The power to issue an injunction should be used sparingly and relief should not be granted except in rare instances in which the law, the facts and the equities are clearly in favor of the moving parties.  *Id.* (*citing Wright and Miller*, Federal Practice and Procedure §2948 at 428-29 (1973)).

In order to obtain a Preliminary Injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) possible harm to other parties; and (4) that the injunction would be in the public interest.  *Doeblers EA Hybrids, Inc. v. Doebler Seeds, LLC*, 88 Fed. Appx. 520, 522 (3d Cir. 2004).  An injunction should only be issued if the moving party produces evidence sufficient to show that the balance of all four factors favors preliminary relief.  *Merchant and Evans, Inc. v. Roosevelt Bldg. Co., Inc.*, 963 F.2d 628, 632 (3d Cir. 1992) (*questioned* on other grounds in *Duraco Prods v. Joy Plastic Enters*, 40 F.3d 1431 (3d Cir. 1994)).

The failure to prove any one factor is fatal to a moving party's Motion for Injunctive Relief. Instantly, Plaintiff cannot meet the heavy burden required to justify the entry of a Preliminary Injunction and it is respectfully requested that this Court must deny Plaintiff's requested relief in its entirety.

**B.    Plaintiff Is Not Entitled To A Preliminary Injunction Because It Has Not Demonstrated A Likelihood Of Success On The Merits Of Its Claims**

Plaintiff rests its entire argument that it will succeed on the merits of its claims on two cases, *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *cert. denied*, 442 U.S. 907 (1979) and *Joseph D. Shein, P.C. v. Myers*, 576 A.2d 985 (Pa. Super. 1990). Yet the conduct found to be enjoinable in those cases is clearly absent here. In both *Adler, Barish* and *Shein*, the defendant attorneys voluntarily terminated their employment. Ms. Seithel's employment was involuntarily terminated by the Firm. Additionally, in *Adler, Barish,* some of the attorneys were still employed by the plaintiff law firm at the time letters went out to clients informing them of the new firm. Here, Plaintiff admits that Ms. Seithel did not send letters to any clients or referring attorneys until well after it had severed the employment relationship with her. Further, in *Shein*, the breakaway attorneys actually removed files from the plaintiff law firm's offices and sent grossly misleading letters to the clients whose files they had taken. Here Ms. Seithel did not remove anything from the Plaintiff Firm's offices and merely sent a completely factual letter informing the clients and referring counsel of her continuing interest and ability to represent them and giving them a form that permitted them to make a

choice between staying with Plaintiff Firm, going with her new practice, or being represented by third party counsel.

Moreover, Plaintiff has failed to inform the Court that the underlying bases of both the *Adler Barish* and *Shein* decisions have been inexorably altered by the decision of the Pennsylvania Supreme Court in *Walnut Street Associates v. Brokerage Concerpts,* 20 A.3d 468 (Pa. 2011), a copy of which is attached hereto as Exhibit "A". In that matter, the Pennsylvania Supreme Court determined that truth is a complete defense to a claim of tortious interference brought pursuant to Pennsylvania law and accordingly, would in the present situation exonerate Ms. Seithel from any wrongdoing.

While it totally failed to bring the *Brokerage Concepts* holding to the Court's attention, Plaintiff, in apparent recognition of the weakness of its reliance on the *Adler, Barish* and *Shein* cases, attempts to argue that the letter Ms. Seithel sent to clients and referring counsel was "misleading" (not untruthful as required in *Brokerage Concepts*) because she is only licensed to practice in the State of South Carolina and, therefore, could not represent them in other jurisdictions, including in Pennsylvania. This factual contention is completely without merit. As she has in the past as an employee of both Motley Rice and the Plaintiff Firm, Ms. Seithel can, **and has**, obtained local counsel and will be or has been admitted to the various jurisdictions *pro hac vice.* Accordingly, there was absolutely nothing false or misleading in the letters Ms. Seithel sent to clients and referring counsel after her employment was terminated by the Plaintiff Firm. Indeed, her conduct in sending those letters

and in accepting the requests by numerous clients that she remain as their counsel was completely proper. Accordingly, in the absence of any allegation that Defendants uttered patently false statements to the clients who were given complete freedom of choice, Plaintiff cannot meet its burden to demonstrate that there is a likelihood it will succeed on the merits of its claims against Defendants.

### C.   Plaintiff's Motion For Preliminary Injunction Should Be Denied Because Plaintiff Cannot Establish That It Will Suffer Irreparable Injury Absent Relief

It is well settled in the Third Circuit that "a clear showing of immediate irreparable injury" is necessary to justify the entry of a preliminary injunction. *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976). An injunction may not be used to eliminate the possibility of a remote future injury, or a future invasion of rights. Rather, there must be a "presently existing actual threat of irreparable injury." *Holiday Inns of America, Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). Irreparable harm is defined as that harm which ". . . cannot be redressed by illegal or inequitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (internal citations omitted).

The "...Third Circuit has continually noted that where the claimed injury actually constitutes a loss of money, the loss is capable of recoupment in an action at law." *Greene v. Robert Rubin*, Civ. A. No. 95-2415, 1998 U.S. Dist. LEXIS 227 **3-4 (E.D. Pa. January 15, 1998) (*quoting Naccaratti v. Wilkins*

*Township*, 846 F.Supp. 405, 409 (W.D. Pa. 1993)).  Therefore, a loss of income

alone does not constitute irreparable harm.  *Id.* In other words, "the availability

of adequate monetary damages belies the claim of irreparable injury." *Frank's*

*GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.

1988).

As the Supreme Court explained in *Sampson v. Murray*, 415 U.S. 61, 90

(1974), "[m]ere injuries, however substantial, in terms of money, time and

energy necessarily expended in the absence of a stay, are not enough.  The

*possibility* that adequate compensation . . . will be available at a later date, in

the ordinary course of litigation, weighs heavily against a claim of irreparable

harm" (quotations omitted).  Accordingly, the Court in S*ampson* held that, even

assuming the plaintiff "made a satisfactory showing of loss of income and had

supported the claim that her reputation would be damaged . . . . we think the

showing falls far short of the type of irreparable injury which is a necessary

predicate to the issuance of a temporary injunction." *Sampson, 415* U.S. at 91-

92.

In the present matter, Plaintiff again relies primarily on the totally

inapposite holdings in *Adler, Barish* and *Shein* to assert that, despite the

availability of monetary damages, the interference with its relationship with its

clients is sufficient to establish irreparable harm.  As noted above, the freedom

of a client to have the representation of his or her choice is paramount.  That

freedom is so important that the Code of Professional Responsibility specifically

prohibits any agreement that would prohibit an attorney from competing with a

former firm and thus limit a client's choice of counsel.  Rule 5.6, Pennsylvania Code of Professional Responsibility.

Plaintiff also disingenuously asserts that injunctive relief is necessary to prevent the "multiplicity of suits" it asserts will be required for plaintiff and the clients to "challenge each action or inaction of the defendants."  Initially, this argument presupposes that Defendants will be unable to provide adequate representation to the clients, an assertion that is patently absurd as Ms. Seithel was clearly providing adequate representation while employed by the Plaintiff Firm, and she has already arranged for well regarded local counsel and has even been admitted in a number of cases *pro hac vice*.

The Plaintiff's repugnantly disparaging argument aside, the type of "multiplicity of suits" that warranted injunctive relief in the cases cited by Plaintiff are not the type alleged in this matter.  In each of the cases Plaintiff cites in its Memorandum of Law, an injunction was issued to prevent a continuation of the same type of proven unlawful conduct that gave rise to the suit.  *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 329-330, 125 A.2d 755, 766 (1956) (defendant's practice of refusing blacks admission to its pool was enjoined); *Hill v. Nationwide Insurance Co.*, 570 A.2d 574, 576 (Pa. Super.1990), *app. den.*, 525 Pa. 647, 581 A.2d 573 (1990) (the continuing nature of the defendant's ongoing refusal to pay plaintiff's medical expenses would require the plaintiff to bring a succession of legal actions); *Luitweiler v. Northchester Corp.*, 319 A.2d 899, 902 (Pa. 1974) (continuing nature of defendant's improperly imposing a monthly surcharge on tenants who

12

did not purchase propane from him would require the plaintiffs to bring a succession of legal actions).

It is clear that the **only** possible harm to Plaintiff to remedy is one that can be remedied only by the award of money arising from the alleged tortuous interference. Plaintiff simply cannot establish that it will suffer irreparable harm, and it is respectfully suggested that Plaintiff's request for a preliminary injunction must be denied.

**D.    Plaintiff Is Not Entitled To A Preliminary Injunction Because Other Parties Will Be Harmed If The Injunction Is Granted**

As detailed above, a client's right to be represented by the attorney of his or her choice is inviolable. While Plaintiff asserts that it is seeking the instant injunction to protect the rights of those clients, the imposition of an injunction would clearly hinder the clients' right to choose their legal counsel.

The imposition of a preliminary injunction in this matter would impede the rights of the clients at issue to be represented by the attorney(s) of their choice. Simply stated, it is axiomatic that the choice made by the client on any basis must remain inviolate. Therefore, it is respectfully suggested that Plaintiff's request for a preliminary injunction must be denied.

**E.    Plaintiff's Motion for Preliminary Injunction Should Be Denied Because Denial Of The Preliminary Injunction Will Better Serve The Public Interest**

The right of clients to choose their counsel is so important that the Pennsylvania Supreme Court adopted a rule prohibiting any agreement that could impede that freedom of choice. Rule 5.6, Pennsylvania Code of Professional Responsibility. The imposition of a preliminary injunction would

have the exact effect Rule 5.6 sought to prevent.  Therefore, denial of the preliminary injunction will preserve the rights of the clients at issue here to choose who they want to represent them, and in turn will better serve the public interest. *See Walnut Street Associates v. Brokerage Concepts, 20 A.3d at 475* ("Ours is a free society where citizens may freely interact and exchange information. Tortious interference, as a basis for civil liability, does not operate to burden such interactions, but rather, to attach a reasonable consequence [only] when the defendant's intentional interference was "improper.")

## IV.   **CONCLUSION**

Based on the foregoing reasons including Plaintiff's total inability to establish irreparable harm, Defendants respectfully request that Plaintiff's Motion for Preliminary Injunction must be denied and the presently governing Temporary Restraining Order entered by Judge Sanchez effective on August 26, 2011 must be dissolved.

Respectfully submitted,

SPECTOR, GADON & ROSEN, P.C.

By:___/s/ Jennifer Myers Chalal (77841)
    Alan B. Epstein (ID No. 02346)
    Jennifer Myers Chalal (ID No. 77841)
    1635 Market Street – 7th Floor
    Philadelphia, PA 19103
    (215)241-8888

Dated:

## CERTIFICATE OF SERVICE

I hereby certify that on this 28h day of September, 2011, I caused a true and correct copy of *Defendants' Response to Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum of Law* to be filed on the electronic filing system for the U.S. District Court for the Eastern District of Pennsylvania and served on the following counsel via electronic mailing:

Marc J. Zucker, Esquire
Jennifer Hiller Nimeroff, Esquire
WEIR & PARTNERS, LLP
The Widener Building, Suite 500
1339 Chestnut Street
Philadelphia, PA 19107
mzucker@weirpartners.com

/s/ Jennifer Myers Chalal
Jennifer Myers Chalal
