UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELDMAN & PINTO, P.C., <br> Plaintiff <br><br> v. <br><br> MARTHA LYNN SEITHEL and <br> SEITHEL LAW LLC, <br> Defendants | : Civil Action No. 11-cv-5400 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PARTIAL STAY OF PRELIMINARY INJUNCTION

Defendants have requested a stay of two critical paragraphs of the Court's December 23, 2011 preliminary injunction, knowing that without them, the process of restoring the *status quo ante* cannot go forward. One of the two paragraphs was taken verbatim from the temporary restraining order that they readily embraced. The other paragraph simply requests the submission of corrective letters to the Court by January 2, and is now moot. Because their appeal is frivolous, and there is no possible basis for staying those two aspects of the Court's relief, a stay must be denied.

PROCEDURAL HISTORY

Feldman & Pinto P.C. commenced the instant action by writ of summons on June 13, 2011 in the Philadelphia Court of Common Pleas, and filed a Complaint and Motion for a Preliminary and Special Injunction on August 25. Defendants removed the action to this Court on August 26, 2011 (Doc. 1). Following an emergency hearing, the Honorable Juan Sanchez entered a temporary restraining order orally on August 26, 2011 and confirmed it in writing on August 29 (Doc. 6). U.S. District Judge Petrese Tucker held a preliminary injunction hearing on October 12-14, 2011; October 26-27, 2011; and November 2-3, 2011, at which the court

reviewed more than 60 exhibits, and received over 1600 pages of testimony from 11 witnesses (3 by trial deposition). The parties each submitted lengthy proposed findings of fact and conclusions of law (Docs. 35 and 36). On or about December 22, 2011, the Court entered a preliminary injunction and supporting opinion with findings of fact and conclusions of law with specific citations to the record (Docs. 37 and 38).

Based on the credible testimony of plaintiff's witnesses and supportive testimony of defendant's own expert, the Court found, *inter alia*:

- that Seithel was an employee-at-will for Feldman & Pinto P.C. until June 13, 2011, when Laura Feldman concluded that Seithel had locked the firm out of files stored on an online Dropbox and immediately terminated her employment (Op. at 3, 5 and 20);
- that Seithel thereafter contacted numerous referring attorneys and approximately 450 clients who had existing contractual relationships with Feldman & Pinto, making false statements to them regarding the circumstances of her departure, the nature and composition of her new firm, her level of leadership and responsibility and other material matters, and failing to disclose to them that she was barred only in South Carolina (Id. at 6, 16, 17, 19-22);
- that she did so using confidential client information which she gained as a result of her relationship with Feldman & Pinto, to Feldman & Pinto's prejudice (Id. at 26, 33);
- that in response to those solicitation efforts, 153 clients and referring attorneys returned forms to Seithel, indicating that they wanted her to represent their interests (Id. at 7);

2

- that Seithel's conduct was improper, misleading and in violation of the Rules of Professional Conduct (Id. at 22, 25);

- that Feldman & Pinto fulfilled its burden of demonstrating a substantial likelihood that Seithel's conduct was improper, and therefore, a substantial likelihood of success on the merits of its claim for intentional interference with contractual relations (Id. at 26);

- that Feldman & Pinto will suffer irreparable harm if injunctive relief is not granted, by virtue of ongoing threats to its reputation, its relationship with clients and referring attorneys, threatened inability to protect those clients' interests and inability to access files stored on the Dropbox, and the "extreme deprivation" that could impact its pharmaceutical mass tort practice (Id. at 28-32);

- that the clients' own interests were threatened, by virtue of their confused reaction to Seithel's misrepresentations, the terms of Seithel's fee agreements which call for arbitration in South Carolina, and tolling agreements to which Seithel was not a party (Id. at 27, 32);

- that "Seithel's communications with clients posed too great a risk of undue influence on unsophisticated clients" (Id. at 34);

- that defendants made no showing of significant harm posed by injunctive relief, and that they will not be prevented from soliciting clients unaffiliated with Feldman & Pinto (Id. at 32-33);

- that the public interest would be well served by implementing a process which would protect attorney-client relationships and restore the right of Feldman &

Pinto clients to make an informed decision about their choice of representation (Id. at 32-33); and

- that no public interest is served in permitting Seithel to benefit from clients' immediate, perhaps ill-considered, response to the circumstances, especially where, as here, her solicitation violated the Rules of Professional Conduct. (Id. at 22, 25 & 33).

Defendants filed a Notice of Appeal (Doc. 39) on or about December 29, 2011, and filed the instant motion for stay pending appeal (Doc. 41) on December 30, 2011. On January 2, 2012, plaintiff submitted a proposed corrective letter (Doc. 42) for the Court's review, as directed in the December 22 Order. Defendants filed their submission (Doc. 43) on January 3, 2012.

ARGUMENT

A. Standard For A Stay Pending Appeal

The standard for granting a stay of a district court's order pending appeal was articulated by the Third Circuit in Republic of the Philippines v. Westinghouse Electric Corporation, 949 F. 2d 653, 658 (3d Cir. 1991). The factors to be considered are (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Id.; Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Sentry v. Pearl, 662 F. Supp. 1171 (E.D.Pa. 1987). Defendants have failed to meet their burden of proving any of these factors.

B.  Seithel Has Failed To Make The Requisite Strong Showing That She Is Likely To Succeed On Appeal.

Seithel and her firm have utterly failed to demonstrate that they are likely to succeed on the merits of their appeal, let alone the strong showing required on a motion for stay. "The law has entrusted the power to grant or deny an injunction to the discretion of the trial court in the first instance, and not to the appellate court." Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955, 958 (3d Cir. 1984). Thus, "the burden on an appellant seeking reversal of a trial court's determination on an application for a preliminary injunction is a heavy one." Scooper Dooper, Inc. v. Kraftco Corp., 460 F.2d 1204, 1205 (3d Cir. 1972). The trial court decision should not be reversed unless the court "abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof." Gerardi v. Pelullo, 16 F.3d 1363, 1372-1373 (3d Cir. 1994); accord, Cleary v. Waldman, 167 F.3d 801, 804 (3d Cir. 1999) ("we will find an abuse of discretion only upon concluding that the District Court's view was contrary to reason"). In the absence of proof of such error, "the appellate court must take the judgment of the trial court as presumptively correct." SK&F, Co. v. Premo Pharmaceutical Laboratories, 625 F.2d 1055, 1066 (3d Cir. 1980).

In their motion, defendants' only challenge to the Court's injunction is that there was no showing that the harm threatened to plaintiff caused by Seithel's unethical and improper interference with client and referral relationships was irreparable, and could not be fully compensated by money damages. Defendants' position is particularly ironic, given that in their motion to stay, defendants allege that *they* will be irreparably harmed by the Court's effort to ensure that clients' decisions are better informed.

In any event, their suggestion that there was insufficient evidence of irreparable harm flies in the face of the evidence and legal authorities discussed at length in the Court's opinion. The Court found, for example, that:

> the facts at issue still indicate that Plaintiff will suffer irreparable harm if injunctive relief is not granted. Plaintiff produced evidence to demonstrate that it has already faced a loss of clients, and is currently unable to protect the interests of its clients due to the prior TRO entered by this Court. Moreover, Plaintiff remains unable to access its own client files because it has been locked out of the Dropbox. Both the courts in Adler Barish and Shein found such injury to be irreparable.

Opinion at 28.

The Court also relied upon the decision in Vector Security, Inc. v. Stewart, Jr., 88 F. Supp. 2d 395, 399 (E.D. Pa. 2000), for the principle that impact on client and referral relationships is a form of irreparable harm. The Court found that

> Seithel's conduct has ... jeopardized Plaintiff's relationships with its clients and referring attorneys. This is evident from Erika D.'s e-mail to Plaintiff, which, due to the confusion resulting from Seithel's letter, expressed that Erika D.'s regard for the firm had been "tainted," and described the firm as having a "lack of organization and communication" and a "lack of professionalism." A law firm is nothing if it cannot establish long-term relationships with clients and referring law firms. Therefore, as in Vector, the damage that Seithel's conduct has done cannot be easily predicted.

Opinion at 29.

The Court further found persuasive authority in Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589, 601 (3d Cir. 1979); BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000) and Bennington Foods LLC v. St. Croix Renaissance, Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008), in which the Third Circuit found harm to reputation to be a further form of irreparable harm justifying injunctive relief. The Court relied upon precedent in Fellheimer, Eichen, & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1229 (3d Cir.

1995) that a law firm's reputation its "primary stock in trade," and found that "Plaintiff's ability to maintain a good reputation among those who also do mass pharmaceutical tort work is invaluable." Opinion at 31. The Court took judicial notice of a recent Legal Intelligencer article regarding the parties' dispute, and found that:

> In the Philadelphia legal community, a law firm's reputation is key to a successful practice, and it is vital to a law firm that it be held in the high esteem of other law firms. To deny Plaintiff the opportunity to take action and remedy this tarnished reputation would lead to irreparable injury which is difficult to calculate, and thus warrants an equitable remedy.

Id.

Moreover, the Court found that clients, as interested third parties, also would suffer irreparable harm if injunctive relief were denied. Id. at 32. The Court found:

> All of the three clients deposed in preparation for the injunction hearing testified that they were confused about who Seithel was at the time that they elected to have her represent them. It is inevitable that many more clients were also confused, and therefore, did not have the benefit of informed decision-making in electing their representation. Moreover, Seithel provided no evidence to indicate that she would remedy the tolling agreement issues which Plaintiff introduced at the hearing. Thus, the problems that Plaintiff has pointed out are legitimate concerns that have already actually harmed clients, and will likely lead to irreparable harm to them in the future.

Id. at 32.

Given these factual findings, which are entitled to great deference, and the overwhelming body of case law supporting the award of injunctive relief in this case, the likelihood of reversal is slim at best. In Dunkin' Donuts, Inc. v. Liu, 2001 WL 111610 (E.D.Pa.2001)(Kelly, J.), the Court held that its "earlier finding that Plaintiffs have a likelihood of success on the merits precludes the Court from finding that, for purposes of [an emergency motion for stay of an injunction], Defendants have likelihood of success on the merits on the same issue." As this Court aptly noted, the "same logic applies" in any motion for stay of an injunction pending

appeal. CNB Financial Corp. v. CNB Community Bank, 2004 WL 2414842 (E.D. Pa. Oct. 26, 2004)(Tucker, J.).

### C. Seithel and Her New Firm Will Not Be Irreparably Injured Absent a Stay.

Seithel has made no showing whatsoever that she will be injured – let alone irreparably – if the Court proceeds with the corrective letter process, and if she is prevented from communicating with referring counsel regarding the representation of Feldman & Pinto's clients. To the contrary, in an effort to suggest that her appeal will succeed, she argues that loss of relationships with clients and referring attorneys are compensable by money damages alone. (Seithel Brief at pp. 5-6).

Moreover, the Court found that Seithel offered no evidence prior to entry of the injunction that she would suffer greater harm by virtue of the requested relief than Feldman & Pinto would suffer if the relief had been denied. (Opinion at 32-33). Given this paucity of proof, defendants' argument falls flat.

As for the specific paragraphs that defendants seek to stay, they pose no risk of harm whatsoever. Paragraph 4 is taken verbatim from paragraph 3 of the TRO entered in this case[1]— the same TRO that defendants' counsel argued repeatedly that the Court should adopt in lieu of a more restrictive preliminary injunction. In his opening to the Court, his motion made at the close of plaintiff's case, and again in his closing, counsel for defendants stressed that the TRO should remain in place and that therefore no further injunctive relief was warranted. (See excerpts of

---

[1] Both orders enjoin defendants from "communicating with, directly or indirectly, any referring attorney or co-counsel, with respect to the representation of any Feldman & Pinto P.C. client whose case has been, or is to be, filed in the Philadelphia Court of Common Pleas."

8

394600-1

defense counsel's argument at Exhibit "A" hereto). Having taken that position, defendants are estopped to claim that any paragraph of the TRO is unjustified or harmful.

As for paragraph 6, which addresses the submission of a corrective letter, that paragraph already is moot. Both parties have submitted their proposed corrective letters, and have left to the Court the decision of what should be sent out to clients.

### D. A Stay Of The Injunction Will Result In Irreparable Harm To Feldman & Pinto.

Consistent with the same logic noted above, a finding that Feldman & Pinto would not suffer irreparable harm if the injunction were stayed would directly contradict the Court's finding that the balance of harms weighs in favor of granting the injunction. See, CNB Financial Corp., supra ("For the Court to now conclude that CNB would not suffer substantial harm if the stay were granted would reverse this Court's order dated September 29, 2004 ruling that CNB would suffer immediate irreparable injury absent a preliminary injunction.")

The District Court - considering all of the credible evidence - has already found that Feldman & Pinto will suffer irreparable harm absent an injunction precluding Seithel and her firm from soliciting and representing Feldman & Pinto clients who based their decisions on multiple misrepresentations by Seithel. (See Op. at pp. 28-32 and discussion above at pp. 6-7) *A fortiori*, a stay of the injunction – with the result that Seithel can and will continue to solicit and represent such clients – will result in irreparable harm to Feldman & Pinto.

That harm applies equally to the paragraphs targeted by defendants' instant motion. If the Court were to stay the restrictions on defendants' communications with referral counsel regarding the representation of Feldman & Pinto clients – a restriction which has been in place since August, 2011 – it would give defendants carte blanche to renew the very misconduct which

9

394600-1

the Court so clearly sought to enjoin.[2] Likewise, if the Court were to stay progress on the issuance of its corrective letters, the effort to rectify that past misconduct will be delayed indefinitely, and the client interests which the Court seeks to protect would be infringed.

E. The Public Interest Lies In Enforcing The Injunction And Denying The Stay.

On a motion for a stay pending appeal, the burden is on the party seeking the stay to show that the public interest lies on its side. Gusdonovich v. Business Information Co., 119 F.R.D. 15, 16 (W.D.Pa. 1987). Having failed to meet their burden of proof, defendants are not entitled to a stay. Moreover, the Court found explicitly that the public interest would be well served by implementing a process which would protect attorney-client relationships and restore the right of Feldman & Pinto clients to make an informed decision about their choice of representation (Op. at 32-33). Conversely, the Court found that no public interest is served in permitting Seithel to benefit from clients' "immediate, perhaps ill-considered, response to the circumstances," especially where, as here, her solicitation violated the Rules of Professional Conduct. (Op. at 22, 25 & 33).

---

[2] It is telling, therefore, that defendants' proposed corrective letter (Doc. 43) advises clients to contact those same referring attorneys with any questions they may have. If Seithel were permitted to have ongoing communications with those attorneys regarding the representation of Feldman & Pinto clients, she would be in a position to achieve indirectly what she has been prohibited from doing directly.

10

394600-1

CONCLUSION

    For all of the following reasons, plaintiff asks that defendants' motion be denied.

                              Respectfully submitted,

                              WEIR & PARTNERS LLP

                              By: <u>/s/ Marc J. Zucker</u>
                                   Marc J. Zucker, Esq.
                                   Jennifer Hiller Nimeroff, Esq.
                                   Attorneys for Plaintiff,
                                        Feldman & Pinto P.C.